UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

RICARDO MARSDEN,

                              Petitioner,

                              -against-

SUPERINTENDANT COLVIN,

                              Respondent.

**MEMORANDUM AND ORDER**

17-CV-936 (LDH)

---

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

Ricardo Marsden ("Petitioner") brings the instant petition for a writ of habeas corpus against Superintendent Colvin ("Respondent"), pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Following a jury trial, Petitioner was convicted in state court of two counts of second-degree felony murder, two counts of first-degree burglary, and two counts of attempted first-degree robbery relating to a 2006 murder. On direct appeal, the Appellate Division found that the state had failed to prove beyond a reasonable doubt that Petitioner had committed burglary in the first degree or murder in the second degree under the first count of the indictment, which was predicated upon Petitioner's commission or attempted commission of a burglary. *People v. Marsden*, 130 A.D.3d 945, 948 (2d Dep't 2015). The Appellate Division was satisfied, however, that the remaining convictions were not against the weight of the evidence, and further held that the trial court had properly denied Petitioner's motion to suppress his post-arrest statements. (*Id.* at 947–48.) On November 24, 2015, the New York Court of Appeals denied Petitioner's application for leave to appeal the Appellate Division's decision. *People v. Marsden*, 26 N.Y.3d 1041 (2015).

On February 17, 2017, Petitioner filed a petition for habeas corpus relief.  (*See* Original Petition ("Pet."), ECF No. 1.)  Petitioner raised three claims: (1) juror misconduct resulted in the denial of his right to a fair trial, his right to cross-examine witnesses against him, and the right to a fair and impartial jury; (2) the trial court abused its discretion by allowing into evidence multiple pictures of the victim's body because the sole purpose for the prosecutor's admission of the photographs was to "inflame" the emotion of the jurors; and (3) that the evidence was insufficient to sustain his convictions for felony murder, robbery, and burglary because no witnesses testified that defendant was at the scene of the crime.  (Pet. at 5, 7, 8.)  On May 5, 2017, Respondent filed an affidavit in opposition to the Petition.  (Response to Pet. ("Resp."), ECF No. 7.)  Thirty-five days after that, Petitioner moved to stay the instant action to permit Petitioner to file a motion in New York state court to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10.  (ECF No. 10.)  On June 15, 2017, then-district court Judge Joseph Bianco granted Petitioner's request.  (ECF No. 11.)

Through a serious of orders over the subsequent years, the stay was extended through January 6, 2020.  On December 18, 2020, Petitioner requested an extension of the stay (ECF No. 25), and by letter dated June 22, 2021, Petitioner informed the Court that the Appellate Division, Second Department had affirmed the New York Supreme Court's denial of Petitioner's motion to vacate and requested two weeks to amend the petition.  (ECF No. 26.)  Because Petitioner's time to amend as of right expired on May 26, 2017, by order dated June 23, 2021, the Court directed the parties to brief Petitioner's motion to amend, specifically focusing on why Petitioner's claims are timely under 28 U.S.C. § 2244(d)(1) in light of the Supreme Court's

holding in *Mayle v. Felix*, 545 U.S. 644 (2005).[1]  The Court granted Petitioner and the Government each 10 pages to make their arguments.

In direct contravention of this Court's order, and without seeking leave of Court, Petitioner filed a 25-page brief.  Petitioner's counsel was not precluded from requesting additional pages, yet he did not do so.  Nevertheless, the Court considered all 25 pages, only three of which presented any argument in support of his motion and failed to reference any specific facts to support such arguments.  Respondent likewise submitted a brief in excess of the Court-ordered limit, without seeking leave of Court.  Indeed, both parties exceeded the limitation by 15 pages, making quite clear that the rules set forth by the Court are of no moment to them.  Moreover, even at 25 pages, these submissions omit much of the substance of the parties' arguments or citations to the record, and instead refer the Court to filings submitted in New York state court.  In so doing, the parties ask the Court to cross reference legal arguments made under a different standard, in state court filings, and the factual assertions contained therein, to discern on its own how those arguments and facts bear on the instant motion.  As such, the parties have asked Court to make a determination on this motion based on a submission made to the state court.  The Court is unaware of any legal basis for the Court to do so and the parties have provided none.  The Court has nevertheless assessed the substance of Petitioner's argument and finds it lacking.

---

[1] Federal Rule of Civil Procedure 15, made applicable to habeas proceedings by 28 U.S.C. § 2242, Federal Rule of Civil Procedure 81(a)(4), and Habeas Corpus Rule 12, allows pleading amendments with the other party's written consent or the court's leave any time during a proceeding.  *See* Fed. Rule Civ. Proc. 15(a).  Within 21 days after a responsive pleading is served, pleadings may be amended once as a "matter of course," *i.e.*, without seeking leave of court.  *Id.*  Here, there is no question that Petitioner's time to amend as of right had expired when Petitioner requested two weeks to amend his petition.

**DISCUSSION**

Federal courts generally may not review habeas claims that are time barred or procedurally barred on independent and adequate state law grounds. There is, however, an exception where a petitioner has made a credible and compelling claim of actual innocence. In his motion to amend, Petitioner does not contend that his newly added claims are timely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") or that he is entitled to equitable tolling. Rather, Petitioner argues that the Court should grant his motion to amend because the newly added claims relate back to the initial petition and because he has "presented prima facie evidence of actual innocence." (Pet'r Mem. L. Supp. Mot. Am. ("Pet'r Mem.") at 23, ECF No 27-4.) Respondent contends that (i) the newly added claims do not relate back to the claims raised in the initial petition and are therefore time barred, (ii) the newly added claims are procedurally barred on independent and adequate state grounds, and (iii) the "actual innocence" exception to these bars does not apply. (Resp.'s Mem. L. Opp'n Pet'r Mot. Amend ("Resp.'s Opp'n") at 6–15, ECF No. 28-1.)

A.  **Timeliness Under AEDPA**

With the passage of AEDPA, Congress set a one-year period of limitations within which a person in custody pursuant to a state court conviction may file a petition for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The one-year period runs from the date on which the latest of four events occurs:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

None of these subsections are satisfied here. At the outset, Petitioner has provided no basis upon which the Court can conclude that subsection (B), (C), or (D) is applicable. And, under subsection (A), the petition is untimely. Petitioner's judgment of conviction became final on February 22, 2016—90 days after the Court of Appeals denied his request for leave to appeal. *See People v. Marsden*, 26 N.Y.3d 1041 (2015); *see also Valverde v. Stinson*, 224 F.3d 129, 132 (2d Cir. 2000) (conviction becomes final when ninety-day period to seek direct review from the United States Supreme Court by way of certiorari expires). The original petition in this action, which was filed pro se from prison, was stamped by the prison on February 17, 2017, and is therefore considered to have been filed on that date. *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (a petition filed by an incarcerated defendant is deemed filed on the date it is given to correctional authorities for mailing to the court). Four days later, on February 21, 2017, the one-year statute of limitations for filing a habeas petition expired. *See* 28 U.S.C. § 2244(d)(1)(a). Accordingly, the statute of limitations has expired on Petitioner's habeas claim.

### B. Whether Plaintiff's New Claims Relate Back to the Original Petition

Amendments made after the statute of limitations has expired relate back to the date of the original pleading only if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original

5

pleading." Fed. R. Civ. P. 15(c)(1)(B)).  A habeas petition does not "relate back" and evade the AEDPA's time limit "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  *Mayle v. Felix*, 545 U.S. 644, 650 (2005).

*Mayle* is instructive on this point.  There, the Supreme Court rejected a petitioner's interpretation of same "conduct, transaction, or occurrence" to mean same "trial, conviction, or sentence[,]" finding that such a reading would render Rule 15 meaningless in the habeas context. 545 U.S. at 664.  The Supreme Court held that because petitioner's own pretrial statements, newly raised in his amended petition, were separated in time and type from a witness's videotaped statements that were raised in the original petition, the former would not relate back under the definition of "conduct, transaction, or occurrence."  *Id.* at 657.  In contrast, in *Mandacina v. United States*, the original petition alleged *Brady* violations, while the amended petition alleged the government's failure to disclose a particular report.  *See* 328 F.3d 995, 1001 (8th Cir. 2003).  Because both pleadings related to exculpatory evidence obtained at the same time by the same police department, the Eighth Circuit approved relation back.  *Id.*  And in *Woodward v. Williams*, the Tenth Circuit found that relation back was appropriate where the original petition challenged the trial court's admission of recanted statements, while the amended petition challenged the court's refusal to allow the defendant to show that the statements had been recanted.  263 F.3d 1135, 1142 (10th Cir. 2001).

Here, Petitioner argues that the claims in his amended petition relate back to the claims submitted in his original petition, because "the expert reports and scientific journals and case law about false confession offered by [Petitioner] in his 2019 motion to vacate all relate back to the same operative facts of his initial petition."  (Pet'r Mem at 23.)  But, whether the claims made in

6

the state court motion relate to the initial petition is of no moment.  Instead, the question is whether the claims asserted in the proposed amended petition relate to the facts underlying the claims set forth in the initial petition.  Even assuming Petitioner intended to argue that the claims in his amended petition relate to the claims in his original Petition, his argument fails.  Petitioner merely argues that the expert reports offered in support of his new claims "were a review of the evidence presented at trial and that which formed the basis of his first petition." (Pet'r Mem. at 23. )  Perhaps tellingly, Petitioner provides no further explanation on this point and points to no specific facts in his initial petition to which his new claims relate.  Without more, Petitioner's argument that his claims relate to "evidence presented at trial" is the same argument that the Supreme Court rejected in *Mayle,* 545 U.S. 644, 662 (2005) ("If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance.").  In any event, as Respondent correctly contends, the newly added claims in the amended petition do not arise out of the same common core of operative facts as the claims set forth in the original petition. (Resp.'s Opp'n at 6–8.)

In his initial petition, Petitioner raised three grounds for relief:  *First*, Petitioner asserted a claim for jury misconduct based on one juror's testimony that deliberations were tainted by outside evidence, such as newspaper articles and information about Petitioner's prior bad acts or arrests, which were brought into deliberations by fellow jurors. (Pet. at 5.)  *Second*, Petitioner asserted that the trial court abused its discretion by allowing the prosecution to admit into evidence multiple photos of the deceased's body, which were admitted solely to inflame the jurors' emotions.  (*Id.* at 7.)  *Third*, Petitioner asserted that the evidence was insufficient to convict Petitioner based on felony murder, robbery, or burglary, because no witnesses testified

7

that Petitioner was at the scene of the crime and there was no evidence to support that a burglary or robbery occurred.  (*Id.* at 8.)

In his amended petition, Petitioner raises nine separate grounds for relief.  *First*, Petitioner asserts that he is actually innocent.  (Am. Pet. at 4, ECF No. 27-1.[2])  *Second*, Petitioner asserts that his right to equal protection was violated when the state court denied his motion to vacate without a hearing.  (*Id.* at 5.)  *Third*, Petitioner asserts a claim for ineffective assistance of counsel relating to his trial counsel's failure to call a forensic expert to refute Detective Kovar's testimony, failure to call a forensics pathologist to refute Dr. O'Reilly and Dr. Bloom's testimony regarding the victim's time of death, failure to request a negative inference based upon the investigator's failure to preserve the pot of food on the stove at the victim's apartment, and failure to move to preclude statements allegedly made by Petitioner to detectives Re, McHugh, and Hoctor, in light of the state's failure to corroborate such statements pursuant to CPL § 60.50.  (*Id.*)  *Fourth*, Petitioner claims that his statements used against him at trial were involuntary and unreliable, and the use of such statements violated Petitioner's right to a fair trial.  (*Id.*)  *Fifth*, Petitioner asserts that his fifth amendment right to a fair trial was violated because the jury deliberations were tainted by outside information and at least one member of the jury was pressured into a verdict.  (*Id.*)  *Sixth*, Petitioner claims that the testimony of three witnesses, Detective Scott Kovar, Dr. Tamara Bloom, and Dr. Brian Reilly, was fraudulent.  (*Id.* at 6.)  *Seventh*, Petitioner claims the evidence was insufficient to convict.  (*Id.*)  *Eighth*, Petitioner claims that the State destroyed evidence, namely the food in the pot on the stove, that would have provided critical evidence relating to the time of death.  (*Id.*)  *Ninth*, Petitioner argues that

---

[2]  Citations to the Amended Petition refer to the page numbers assigned by the Court's electronic case filing ("ECF") system.

due to these cumulative errors, Plaintiff was denied a fair trial. (*Id.*) The common core of operative facts underlying the initial petition are the introduction into evidence of photos of the deceased, the effect of outside information on jury deliberations, the lack of testimony putting Petitioner at the scene of the crime, and the absence of any evidence that a burglary or robbery occurred.

Contrary to Petitioner's argument, the initial petition does not raise any claim based on the same facts as the statements that Petitioner made to officers or the use of those statements at trial (grounds three and four). Nor are any of the claims raised in the initial petition based on the trial testimony of Detective Scott Kovar, Dr. Tamara Bloom, or Dr. Brian Reilly (grounds three and six) or the State's failure to preserve the pot of food at the scene (grounds three and eight). As such, claims three, four, six, and eight do not relate back to the initial petition.

Next, Petitioner's second ground for relief in the amended petition is "plainly meritless" because "procedural errors in state post-conviction proceedings are not cognizable on federal habeas review." *Velazquez v. Poole*, 614 F. Supp. 2d 284, 344 (E.D.N.Y. 2007) (denying as meritless petitioner's claim that the trial court and appellate division denied him due process by ruling on his § 440.10 motion without a hearing); *cf. Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) (an attack on a state habeas proceeding "does not entitle the petitioner to [federal] habeas relief in respect to his conviction, as it is 'an attack on a proceeding collateral to the detention and not the detention itself'" (citation omitted)). Plaintiff's first ground for relief, actual innocence, and ninth ground for relief, that Petitioner was denied a fair trial, appear to be based on the same facts as Petitioner's other grounds for relief and are not separate claims in and of themselves. *See Hyman v. Brown*, 927 F.3d 639, 656 n.20 (2d Cir. 2019) ("Actual innocence is 'not itself a constitutional claim'—except perhaps when raised in the context of an Eighth

9

Amendment challenge to a capital sentence." (quoting *Schlup v. Delo*, 513 U.S. 298, 315 (1995))).

Only Petitioner's fifth and seventh grounds for relief relate back to the original petition. This is because they are essentially the same claims raised in the original petition and are therefore based upon the same set of facts. That said, Petitioner's fifth ground for relief relates back to the original petition only to the extent that it is based on the provision of outside information to jurors. To the extent Petitioner asserts that at least one member of the jury was pressured into a verdict, that claim does not relate back to the original petition.

Accordingly, Petitioner's newly added claims are untimely unless Petitioner can show that he is entitled to equitable tolling. The limitations period defined in 28 U.S.C. § 2244(d)(1) "is subject to equitable tolling" only where the petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation omitted); *see also Rivas v. Fischer*, 687 F.3d 514, 538 (2d Cir. 2012) (citations omitted). Petitioner has made no argument that there was any circumstance, let alone an extraordinary circumstance, that prevented him from filing these papers or raising these claims prior to the expiration of the one-year limitations period. Instead, Petitioner argues that his claim of actual innocence warrants consideration of his amended petition.[3]

---

[3] Respondent also argues that Petitioner's claims are procedurally barred on adequate and independent state grounds. Having found that Plaintiff's claims are time-barred, the Court need not address this argument. Moreover, the Court directed briefing on the statute of limitations issue and set a briefing schedule that did not provide Plaintiff with an opportunity to file a reply. Accordingly, although Petitioner could have requested leave to file a reply, he did not, and thus has not had an opportunity to respond to the argument that his claims are procedurally barred.

10

### C. Actual Innocence

A habeas petitioner can overcome AEDPA's one-year statute of limitations by making a demonstration of actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). To be sure, actual innocence does not toll the statute of limitations set forth by the AEDPA. Rather, "actual innocence, if proved, serves as a gateway through which a petitioner may pass," after the "expiration of the statute of limitations," to seek review of otherwise time-barred claims.[4] *Id.* at 386; *see Rivas*, 780 F.3d at 545 ("actual innocence warrants an equitable exception to AEDPA's limitation period, allowing a petitioner to have his otherwise time-barred claims heard by a federal court"). The petitioner's burden in making a gateway showing of actual innocence is deliberately "demanding" and seldom met. *House v. Bell*, 547 U.S. 518, 538 (2006); *see also Hyman*, 927 F.3d at 656 (collecting cases). A petitioner asserting this exception "must advance both a legitimate constitutional claim and a credible and compelling claim of actual innocence." *Id.* at 656 (quoting *Rivas v. Fischer*, 687 F.3d at 540 (emphases in original).)

First, a petitioner must adduce credible evidence. That is, "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Hyman*, 927 F.3d at 656 (quoting *Schlup*, 513 U.S. at 324). Second, a petitioner's evidence must be compelling. This requirement demands "'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* (quoting *Schlup*, 513 U.S. at 657).

---

[4] A showing of actual innocence also serves as a "gateway" through which a petitioner may pass to overcome a procedural bar such as independent and adequate state law grounds. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

11

To be clear, "evidence of innocence" means "factual innocence, not mere legal insufficiency." *Id.* (citations omitted). The new evidence need not demonstrate factual innocence to an absolute certainty, but "it must be sufficiently credible and compelling to allow a federal court to conclude that 'more likely than not, in light of the new evidence, no reasonable juror would find [petitioner] guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" *Id.* at 657 (quoting *House*, 547 U.S. at 538).[5]

Petitioner argues that he meets this high standard by "present[ing] evidence showing not only that the evidence was unreliable at trial, but also that a true view of the forensic evidence actually supports his innocence." (Pet.'r Mem. at 25–26.) In other words, Petitioner's claim of actual innocence is based on his theory that "new evidence" compels a finding of innocence. Yet, the only "new" evidence Petitioner points to are "expert reports" that purportedly "detail[] the unreliability of the evidence at trial and the likelihood that [Petitioner] did not commit the [] murder." (*Id.* at 25.)

*First*, Petitioner challenges Detective Kovar's testimony regarding the wear of Petitioner's boots. (Pet'r Mem. at 4–6.) Bloody shoe prints at the scene of the murder were consistent with a size eight and a half Timberland work boot—the same type and size of boot Petitioner was wearing when he was arrested approximately four months after the murder. At trial, Detective Kovar testified that the wear on Petitioner's boots was "consistent with a number of months['] time period of normal wear." (Trial Tr. 999.) And, in response to questioning, Detective Kovar further agreed that Petitioner's boots could be consistent with approximately

---

[5] "A reviewing court assessing the probability of actual innocence is not limited to the trial record. To the contrary, it must consider all the evidence, old and new, incriminating and exculpatory, and, in doing so, is not bound by the rules of admissibility that would govern at trial." *Hyman v. Brown*, 927 F.3d 639, 658 (2d Cir. 2019) (citations and quotations omitted).

12

four months of wear. (Trial Tr. 1015.) Petitioner challenges this testimony, by pointing to the report of George Schiro, a forensics scientist employed by Scales Biological Laboratory, who Petitioner engaged to review the forensic shoeprint evidence and testimony of Detective Kovar. Mr. Schiro reported that he was unable to assess the accuracy of Detective Kovar's testimony because Mr. Schiro did not have a mold of the shoeprints. (Pet'r Mem. at 5.) Mr. Schiro concluded, however, that Detective Kovar's statements regarding the age of Petitioner's shoe are not "scientifically supportable, as there is no way to measure time passed as a function of the degree of wear on an individual boot due to numerous uncontrolled variables." (Pet'r Mem. at 5.) This may be so, but even if the Court were to consider this to be "new, reliable evidence," it is not evidence of Petitioner's innocence. That the wear of a boot cannot be determined scientifically, does not foreclose the possibility that Petitioner's boots were consistent with four months of wear. Moreover, even disregarding Detective Kovar's testimony as to the precise amount of wear does not change the fact that, when arrested four months after the murder based on a statement by a witness, Petitioner was wearing boots that matched, in size and style, a bloody footprint at the scene of the murder. Indeed, Petitioner does not challenge this. Thus, even if Petitioner had presented evidence that Detective Kovar's testimony regarding the wear of the boots was false, such evidence would not compel a finding of Petitioner's innocence.

*Second*, Petitioner argues that the time of death testified to at trial was too narrow to be scientifically correct. (Pet'r Mem. at 6–8.) At trial, Dr. Tamara Bloom, the scene pathologist, testified that her opinion was that the victim had been dead for 48 to 72 hours at the time she examined him on September 6, 2006 at approximately 1:30 a.m., but that it was likely that the time of death was closer to 72 hours plus/minus. (Trial Tr. 521, 525–26.) This would put the time of death around the early morning hours of September 3, 2006. Dr. Bloom testified that this

13

was a rough estimation and that time of death is not an exact science. (Trial Tr. 521.) Dr. Brian O'Reilly, the autopsy pathologist in the case, who performed the autopsy on September 6, 2006, between 9:45 a.m. and 1:30 p.m., testified during grand jury proceedings that he thought the victim had died one to two days before the body was discovered. (*Id.* 570–76.) At trial, Dr. O'Reilly testified that victim had been dead for three days. (*Id.* 558.) Specifically, he testified that, although he stated at the grand jury proceedings that he thought the victim had been dead for one to two days, his opinion, after reviewing all of the information, including Dr. Bloom's report, was that the victim had been dead for three days. (*Id.* 570–76.) Dr. O'Reilly also testified that it is fair to say that the specific time of death is not determinable in this type of case. (*Id.* 568.)

For the purposes of the instant action, Petitioner engaged an expert, Dr. Zhongxue Hua, who reviewed the case file and concluded that the victim could have died any time between the evening of September 2, 2006 and the morning of September 4, 2006. (*See* Pet'r Mem. at 7; Pet'r Mem., Ex. A at 67–68 (Dr. Hua's report), ECF 27-3.) Petitioner argues, any narrower time of death, such as that identified by the scene pathologist and autopsy pathologist, would be "false." (Pet'r Mem. at 7–8.) But, the time of death estimate testified to at trial falls within the range provided by Petitioner's own expert. Nevertheless, Petitioner argues that because cell phone records placed Petitioner near the scene of the murder around 5:30 a.m. on September 3, 2006, the possibility of a time of death at any time other than 5:30 a.m. is sufficient to compel a finding of innocence. It is not. Dr. Hua's report merely states that a 5:30 a.m. time of death on September 3, 2006 is equally as possible as another time of death within a three-day window. (Pet'r Mem., Ex. A at 68 (Dr. Hua's report).) This is not compelling evidence of Petitioner's innocence. Moreover, although Dr. Hua's report was not presented to the jury, the inability to

14

pinpoint time of death was thoroughly addressed at trial. *Dunbar v. Griffin*, No. 11-CV-5858, 2022 WL 36366, at *4 (E.D.N.Y. Jan. 4, 2022) (denying gateway claim of actual innocence based on expert report questioning reliability of eyewitness identification where the subject of misidentification was well-probed at trial). Indeed, Dr. Bloom testified herself that the time of death she estimated—48 to 72 hours prior to her examination at 1:30 a.m. on September 6, 2006, but closer to 72 hours plus/minus—was a rough estimation and that time of death is not an exact science. (Trial Tr. 521, 525–26.) Dr. O'Reilly, too, testified that the specific time of death is not determinable in this type of case. (*Id.* 568.) Both pathologists were questioned on direct and cross examination (and Dr. O'Reilly was questioned on re-direct, and re-cross as well). "Courts have been wary of finding evidence of actual innocence where supposedly new evidence does little more than provide further evidence of an argument raised at trial." *Dunbar*, 2022 WL 36366, at *4 (citing *Johnson v. Hofmann*, No. 06-cv-81, 2006 WL 3487633, at *6 (D. Vt. Dec. 1, 2006)). The evidence Petitioner now points to—Dr. Hua's report offers nothing new, and certainly does not prove Petitioner's innocence.

*Third*, Petitioner claims that he did not make the post-arrest statements attributed to him at trial or that the statements were coerced, and that the statements had "no business being in front of a jury." (Pet'r Mem. at 8.) Petitioner appears unable to decide whether he did not make these statements, or whether he made the statements, but they were false and the product of coercion. In any event, the issue of coercion was addressed during a pre-trial hearing. Petitioner specifically raised his youth and asserted that he was assaulted by detectives during questioning and deprived of sleep. (Resp. Opp'n, Ex. A at 26, 28–29, ECF No. 28-2; Trial Tr. at 227–87; *see also* Pet'r Appellate Division Brief at 25–31, ECF No. 7-20.) The state court deemed Petitioner's statements admissible, *i.e.*, not coerced. "When a federal court reviews the merits of

15

a habeas petition, the 'factual findings of the New York Courts are presumed to be correct.'" *Cosey v. Lilley*, 460 F. Supp. 3d 346, 363 (S.D.N.Y. 2020) (quoting *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997)); *see also Watson v. Artuz*, 283 F. Supp. 3d 217, 234 (S.D.N.Y. 2018) ("28 U.S.C. § 2254(e)(1) provides that a state court's 'determination of a factual issue' is 'presumed to be correct[,]' and that presumption may be rebutted only 'by clear and convincing evidence'" (citation omitted)), *report and recommendation adopted*, No. 99CIV1364, 2019 WL 762221 (S.D.N.Y. Feb. 21, 2019). Here, that presumption applies.

Petitioner's arguments are, in any event, meritless. Petitioner asserts that he was held in custody for 24 hours without sleep or food prior to making the statements and that he only made the statements after being told that his fingerprints were found at the scene. (Pet'r Mem. at 8.) Petitioner does not point to any evidence to support these contentions. (*See id.*) Petitioner urges the Court to view Petitioner as a juvenile at the time, even while conceding that he was not. (*Id.* at 9.) That Petitioner was 19 when he was questioned does not, by itself, present a constitutional violation, and Petitioner has offered no authority to support that it does. And, that Petitioner's multiple inconsistent accounts of his connection to the murder were, as Petitioner describes them, "absurd" does not make them inadmissible or establish a constitutional violation. Finally, Petitioner's reference to CPL § 60.50 wholly ignores the circumstantial evidence presented against Petitioner. That section provides that "[a] person may not be convicted of any offense solely upon evidence of a confession or admission made by him without additional proof that the offense charged has been committed." CPL § 60.50. Here, ample circumstantial evidence existed, was presented at trial, and is not challenged here. Such evidence includes a statement by witness Charlene Blackman, cell phone records and cell tower location evidence, as well as the bloody shoe prints consistent with Petitioner's boots. Petitioner's argument that his statements

were coerced not only fails to meet the credibility prong of the *Schlup* analysis but fails to present any factual evidence of Petitioner's innocence.

*Fourth*, and finally, Petitioner argues that the crime scene investigators failed to preserve a pot of food that was cooking on the stove and that such evidence, had it been preserved, could have been used to assist in determining the time of death, which in turn could have served as a basis for finding Petitioner innocent. (Pet'r Mem. at 10–11.) Petitioner relies on the report of investigator Nicholas Palumbo, who reviewed the case materials and concluded that there is no way to determine the length of time that the pot was left on the stove. (Pet'r Mem., Ex. A at 78–79 (Palumbo report).) Although Petitioner cites to a number of primarily out-of-circuit cases finding due process violations where potentially exculpatory evidence was destroyed in bad faith, not a single one of those cases was decided under the standard for an actual innocence gateway claim asserted in a habeas petition. (*See* Pet'r Mem. at 11.) Moreover, Petitioner has not demonstrated—much less asserted in anything other than a conclusory fashion—that the failure to preserve the pot of food was done in bad faith, as is required to establish a due process violation under *Arizona v. Youngblood*, 488 U.S. 51 (1988). *See United States v. Bohl*, 25 F.3d 904, 910 (10th Cir. 1994). In addition, that the stove was in the "on" position with food on top of the stove is not "new" evidence. It was before the jury at trial. (Trial Tr. 477 (direct examination of Det. David Nystrom; People's Ex. 1 (video of crime scene); Trial Tr. 509–10 (cross examination of Det. Nystrom).) Nor does this evidence establish Petitioner's innocence. Any argument that it does is entirely speculative.

Petitioner simply does not raise a claim of actual innocence sufficient to overcome the statute of limitations. Petitioner merely re-hashes arguments raised at trial and asks the Court to call into question his convictions based on essentially the same record that was before the jury.

Petitioner has presented no evidence that would justify such an outcome or that meets the high standard to succeed on a gateway claim for innocence. As the Second Circuit found in *Hyman*, "[t]he failure of [Petitioner's] new evidence to make a compelling showing of innocence is further demonstrated by a comparison to *Schlup*, *House*, and *Rivas*. In each of these cases, the new evidence directly supported petitioner's factual innocence by indicating either that he *did not* commit, or *could not* have committed, the crimes of conviction." *Hyman*, 927 F.3d at 665 (emphasis in original). Petitioner has not presented evidence of that kind here. Instead, Petitioner merely challenges the strength of certain evidence in support of the State's case.

This Court cannot find, as would be required to sustain a gateway claim of actual innocence, that "more likely than not, in light of the new evidence, no reasonable juror would find [Petitioner] guilty beyond a reasonable doubt." *Id.* at 657; *see also Diaz v. Bellnier*, 974 F. Supp. 2d 136, 143–44 (E.D.N.Y. 2013) (denying actual innocence gateway claim where evidence did not meet the *Schlup* standard). Therefore, Petitioner cannot overcome AEDPA's statute of limitations, and his untimely claims may not be considered.

## CONCLUSION

For the foregoing reasons, Petitioner's motion to amend his habeas petition is DENIED.

SO ORDERED.

Dated: Brooklyn, New York  
      September 30, 2022

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge